UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANETTE M. BRAITHWAITE, <br>    *Plaintiff,* <br><br> v. <br><br><br> BANK OF AMERICA <br> MERRILL LYNCH <br>    *Defendant.* | § § § § § § § § § § § | CIVIL ACTION NO. _____ <br> **Jury Demanded** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### A. PARTIES

1. Plaintiff, Janette M. Braithwaite, is an individual who can be contacted through counsel.

2. Defendant, Bank of America Merrill Lynch, is a corporation that is incorporated under the laws of North Carolina. Defendant has its principal place of business in the State of New York. Defendant may be served with process by serving its registered agent, CT Corp., 160 Mine Lake Court Suite 200, Raleigh, NC 27615-6417.

### B. JURISDICTION

3. The Court has jurisdiction over the lawsuit because the suit arises under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.

### C. VENUE

4. Venue is proper in this district because the alleged unlawful employment practice was committed in this state. At the time of the occurrence, plaintiff worked for defendant at 17225 El Camino Real, Houston, Texas 77058.

## D.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff timely filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission (EEOC).  Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC.

## E.  DISCRIMINATION UNDER TITLE VII

6. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely, race (African-American) and age.  Plaintiff was subjected to disparate treatment and conditions of employment and denied the same opportunities to be successful as compared to non-black individuals.

On or about April 2013 plaintiff began working for the above named defendant as a Bank Financial Advisor, "BFA," in a trainee program.  This training program lasted 36 months.  Later, the BFA trainee program was later revised to the Bank Team Financial Advisor Program, "Bank TFA."  The new program: eliminated the production credit metric, increased salary, and included additional benefits.

Although plaintiff received written notification that she would be automatically reclassified under the revised Bank TFA role, Mr. David Cheak (Senior Resident Director) repeatedly refused to sign the necessary documentation.  At the time, plaintiff was the only Bank TFA trainee in the Clear Lake, Texas facility eligible to automatically transition into the Bank TFA position and thus plaintiff was the only trainee the Clear Lake Office denied.

2

7. Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. Defendant is an international bank that provides services in mergers and acquisitions, equity and debt, capital markets, lending, trading, risk management, research, and liquidity and payments management, inter alia.

8. Defendant employed David Cheak as senior resident director of the Clear Lake Office. Mr. Cheaks' was responsible for hiring, performance evaluations/reviews, and supervision of the financial advisors and the new hires.

9. Mr. Cheaks, plaintiff's supervisor was empowered by defendant to take tangible employment actions against plaintiff. Not only could Mr. Cheaks fire plaintiff, he stifled her progress with the company. Specifically, he did not allow her to enter the Bank TFA position.

10. Defendant intentionally discriminated against plaintiff because of her race and age in violation of Title VII by blocking plaintiff's ascension up the corporate ladder. Cheaks constructively stripped plaintiff of the tools she needed to be successful at the company. He isolated her by removing her from email chains that shared vital information about their job. When plaintiff complained, Cheaks to no action to remedy the situation. Plaintiff was forced to work with substandard computer equipment that could not run software that was needed for her to perform her job. Towards the end of her employment (August 28, 2014), she was placed at a desk in the corner without a phone or an operational computer. Plaintiff was forced to go to her car to make business calls on a cell phone.

Cheaks repeatedly made derogatory comments to plaintiff. He often referred to her as the worst person in the trainee program. He verbally attacked plaintiff pushing farther from ascension in the company ranks towards a constructive discharge.

11.   In financial institutions, there is a term of art known as ***production credits***, "PC's." Production credits typically equal the amount of commission paid by the client. For financial advisors cash compensation can equal their accumulated production credits times a payout ratio. Production credits normally equal, or at least closely approximate, the sales charges embedded in a given securities transaction. Within defendant's corporate culture, PC's are the monetary amount required to be produced on a quarterly basis as a measure of meeting performance expectation. The amount is either earned and/or contributed to the financial advisor.

In August 2011, Cheak terminated PCs for plaintiff. By doing so, Cheak not only actively prevented plaintiff from climbing the corporate ladder, but he removed the rungs by which she could climb. Without PCs, plaintiff could not accumulate the necessary wherewithal to advance. Cheak further hampered plaintiff by not allowing her to execute ***bank credit transactions.*** Cheak systematically weakened plaintiff's position at the company without justification.

12.   Cheak claims against plaintiff for substandard performance will be proven to be merely pretext. When Cheak removed PC's from plaintiff, she had directed several prospective clients to the team with assets totaling $18,000,000. Any

negative assessment by Cheak regarding plaintiff were made to build a false foundation to oust plaintiff from the company.

13. Accordingly, defendant's practices, policies, and rules appear to be neutral, they serve to discriminate against a disproportionate number of persons of plaintiff's race and age.

14. Cheak created a hostile work environment through his discriminatory words and actions towards plaintiff because of plaintiff's race and age. This conduct was so severe that it altered the terms and conditions of plaintiff's employment and interfered with plaintiff's work performance.

15. Defendant is directly liable because the company was negligent in remedying the discriminatory conduct. Plaintiff repeatedly sent emails and made verbal complaints regarding work conditions, but these complaints were ignored.

16. Defendant is vicariously liable for Cheak's discriminatory conduct. Defendant did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though plaintiff took advantage of defendant's measures designed to prevent and correct discriminatory conduct. Again, when plaintiff reached out for assistance in-house, she was ignored.

### F. DAMAGES

17. As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages.

    a. Plaintiff was denied a promotion, resulting in lost pay and benefits.

    b. Plaintiff was constructively discharged from employment with defendant. Plaintiff has incurred damages related to a loss of benefits.

    c.      Plaintiff suffered loss of her pension or retirement benefits.

    d.      Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security benefits. Reinstatement of plaintiff in her previous position is impractical and unworkable. Therefore, plaintiff seeks an award of front pay and retirement benefits to compensate her.

    e.      Plaintiff suffered mental anguish and emotional distress.

18. Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k).

19. For these reasons, plaintiff asks for judgment against the defendants for the following:

    a.      Back pay, front pay; compensatory damages.

    b.      Punitive damages.

    c.      Prejudgment interest on lost wages and benefits and postjudgment interest on all sums, including attorney fees.

    d.      Attorney fees.

    e.      Costs of suit.

    f.      All other relief the Court deems appropriate.

Respectfully submitted,

The Law Office of Todd E. Webb

By:   /s/Todd E. Webb

TODD E. WEBB

Texas State Bar No.24033317
Federal Admission No. 597748
todd@attorneytoddwebb.com
4101 Greenbriar Suite 122E
Houston, Texas 77098
(713) 529 4400 t
(713) 529 4401 f